UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JENNIFER LYNN DAWES,<br><br>      Plaintiff,<br><br>v.<br><br>ANDREW M. SAUL,[1] Commissioner of<br>Social Security,<br><br>      Defendant. | Case No. 3:19-cv-00001<br><br>Judge Aleta A. Trauger<br>Magistrate Judge Alistair E. Newbern |

To:    The Honorable Aleta A. Trauger, District Judge

## **REPORT AND RECOMMENDATION**

Plaintiff Jennifer Lynn Dawes filed this action under 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of the Social Security Administration (SSA) denying her application for disability insurance benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401–434. (Doc. No. 1.) The Court referred this action to the Magistrate Judge for a report and recommendation on disposition of Dawes's complaint. (Doc. No. 5.) Before the Court is Dawes's motion for judgment on the administrative record requesting reversal of the ALJ's decision and remand for rehearing (Doc. No. 18), the Commissioner's response in opposition (Doc. No. 20), and Dawes's reply (Doc. No. 21). Having considered the parties' filings and the administrative record as a whole, and for the reasons that follow, the Magistrate Judge will recommend that Dawes's motion be granted, that the ALJ's decision be reversed, and that this case

---

[1]    Andrew M. Saul was sworn in as the Commissioner of Social Security on June 17, 2019. Under Federal Rule of Civil Procedure 25(d), he is automatically substituted as the defendant in this action. Fed. R. Civ. P. 25(d).

be remanded for further administrative proceedings and rehearing consistent with this Report and Recommendation.

**I.      Background**

    **A.      Dawes's Disability Insurance Benefits Application**

Dawes applied for DIB on August 14, 2016, alleging that she has been disabled and unable to work since September 9, 2015, as a result of depression, anxiety, bone spurs in her back, hypertension, osteoarthritis in her knees, a full right knee replacement, heel spurs, sleep apnea, and a heart murmur. (AR 77–78, 179–80.[2]) The Commissioner denied Dawes's application initially and on reconsideration. (AR 91–93, 111–12.) At Dawes's request, an administrative law judge (ALJ) held a hearing on December 20, 2017. (AR 28–76, 123–24.) Dawes appeared with counsel and testified. (AR 31–42, 45–55, 70–76.) The ALJ also heard testimony from Silvio S. Reyes, Jr., a vocational expert. (AR 42–45, 55–67.)

    **B.      The ALJ's Findings**

On April 11, 2018, the ALJ issued a written decision finding that Dawes was not disabled within the meaning of the Social Security Act and applicable regulations, and denying her claim for benefits. (AR 12–22.) The ALJ made the following enumerated findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2021.

2. The claimant engaged in substantial gainful activity during 2015, since the alleged onset date of disability (20 CFR 404.1520(b) and 404.1571 *et seq.*).

            *      *      *

3. However, there has been a continuous 12-month period(s) during which the claimant did not engage in substantial gainful activity. The remaining

---

[2] The Transcript of the Administrative Record (Doc. No. 15) is referenced herein by the abbreviation "AR." All page numbers cited in the AR refer to the Bates stamp at the bottom right corner of each page.

2

findings address the period(s) the claimant did not engage in substantial gainful activity.

4. The claimant has the following severe impairments: osteoarthrosis of the left knee and total knee arthroplasty of the right knee (20 CFR 404.1520(c)).

   \*   \*   \*

5. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

   \*   \*   \*

6. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the individual can occasionally lift 20 pounds; frequently lift 10 pounds; standing and walking for 15 minute intervals for a total of 4 hours per day; the individual can engage in only occasional pushing and pulling with the lower extremities, frequently stooping, occasionally climbing and crouching and no kneeling, crawling or use of ladders and should avoid concentrated exposure to vibrations, extreme temperatures, hazards and fumes.

   \*   \*   \*

7. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

   \*   \*   \*

8. The claimant was born on June 21, 1965 and was 50 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563).

9. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

10. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

11. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the

> national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).
>
> * * *
>
> 12. The claimant has not been under a disability, as defined in the Social Security Act, from September 9, 2015, through the date of this decision (20 CFR 404.1520(g)).

(AR 14–22.) The Social Security Appeals Council denied Dawes's request for review on November 5, 2018, making the ALJ's decision the final decision of the Commissioner. (AR 1–5.)

### C. Appeal Under 42 U.S.C. § 405(g)

Dawes filed this action for review of the ALJ's decision on January 3, 2019 (Doc. No. 1), and this Court has jurisdiction under 42 U.S.C. § 405(g). Dawes argues that the ALJ violated SSA regulations by failing to give good reasons for discrediting Dr. Chris Jackson's medical opinion, that the ALJ improperly evaluated Dawes's subjective complaints, and that the ALJ was not properly appointed under the Constitution's Appointments Clause. (Doc. No. 19.) The Commissioner responds that the ALJ's decision is supported by substantial evidence, that the ALJ followed applicable regulations, and that Dawes's challenge to the ALJ's appointment is untimely. (Doc. No. 20.)

### D. Review of the Record

The ALJ and the parties have thoroughly described and discussed the medical and testimonial evidence in the administrative record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## II. Legal Standards

### A. Standard or Review

This Court's review of an ALJ's decision is limited to determining (1) whether the ALJ's findings are supported by substantial evidence and (2) whether the ALJ applied the correct legal

standards. *See* 42 U.S.C. § 405(g); *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 833 (6th Cir. 2016) (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405–06 (6th Cir. 2009)). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (alteration in original) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial evidence is less than a preponderance but "more than a mere scintilla" and means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*; *see also Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014) (same). Further, "[t]he Social Security Administration has established rules for how an ALJ must evaluate a disability claim and has made promises to disability applicants as to how their claims and medical evidence will be reviewed." *Gentry*, 741 F.3d at 723. Where an ALJ fails to follow those rules or regulations, "we find a lack of substantial evidence, 'even where the conclusion of the ALJ may be justified based upon the record.'" *Miller*, 811 F.3d at 833 (quoting *Gentry*, 741 F.3d at 722).

### B.    Determining Disability at the Administrative Level

Dawes applied for DIB under Title II of the Social Security Act, which is an insurance program that "provides old-age, survivor, and disability benefits to insured individuals irrespective of financial need." *Bowen v. Galbreath*, 485 U.S. 74, 75 (1988). To receive DIB, Dawes must establish that she had a disability on or before the last date she was eligible for insurance under Title II, which is determined based on her earnings record. *See* 42 U.S.C. § 423(a)(1)(A), (c)(1); 20 C.F.R. § 404.130. "Disability" in this context is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A).

ALJs must employ a "five-step sequential evaluation process" to determine whether a claimant is disabled, proceeding through each step until a determination can be reached. 20 C.F.R. §404.1520(a)(4). At step one, the ALJ considers the claimant's work activity. *Id.* § 404.1520(a)(4)(i). "[I]f the claimant is performing substantial gainful activity, then the claimant is not disabled." *Miller*, 811 F.3d at 834 n.6. At step two, the ALJ determines whether the claimant suffers from "a severe medically determinable physical or mental impairment" or "combination of impairments" that meets the 12-month durational requirement. 20 C.F.R. § 404.1520(a)(4)(ii). "If the claimant does not have a severe impairment or combination of impairments [that meets the durational requirement], then the claimant is not disabled." *Miller*, 811 F.3d at 834 n.6. At step three, the ALJ considers whether the claimant's medical impairment or impairments appear on a list maintained by the Social Security Administration that "identifies and defines impairments that are of sufficient severity as to prevent any gainful activity." *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); *see* 20 C.F.R. § 404.1520(a)(4)(iii). "If the claimant's impairment meets or equals one of the listings, then the ALJ will find the claimant disabled." *Miller*, 811 F.3d at 834 n.6. If not, the ALJ proceeds to step four. *Combs*, 459 F.3d at 643; *see also Walker v. Berryhill*, No. 3:17-1231, 2017 WL 6492621, at *3 (M.D. Tenn. Dec. 19, 2017) (explaining that "[a] claimant is not required to show the existence of a listed impairment in order to be found disabled, but such showing results in an automatic finding of disability and ends the inquiry"), *report and recommendation adopted by* 2018 WL 305748 (M.D. Tenn. Jan. 5, 2018).

At step four, the ALJ evaluates the claimant's past relevant work and "'residual functional capacity,' defined as 'the most [the claimant] can still do despite [her] limitations.'" *Combs*, 459 F.3d at 643 (alterations in original) (quoting 20 C.F.R. § 404.1545(a)(1)); *see* 20 C.F.R. § 404.1520(a)(4)(iv). Past work is relevant to this analysis if the claimant performed the work

6

within the past 15 years, the work qualifies as substantial gainful activity, and the work lasted long enough for the claimant to learn how to do it. 20 C.F.R. § 404.1560(b). If the claimant's residual functional capacity (RFC) permits her to perform past relevant work, she is not disabled. *Combs*, 459 F.3d at 643. If a claimant cannot perform past relevant work, the ALJ proceeds to step five and determines whether, "in light of [her] residual functional capacity, age, education, and work experience," a claimant can perform other substantial gainful employment. *Id.* While the claimant bears the burden of proof during the first four steps, at step five the burden shifts to the Commissioner to "identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity and vocational profile." *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011). "Claimants who can perform such work are not disabled." *Combs*, 459 F.3d at 643; *see also* 20 C.F.R. § 404.1520(a)(4)(v).

**III.     Analysis**

The crux of this appeal is the ALJ's formulation of Dawes's RFC—specifically, his determination that, despite a finding of severe osteoarthrosis in her left knee and a total knee arthroplasty in her right, Dawes can "stand[ ] and walk[ ] for 15 minute intervals for a total of 4 hours per day" (AR 17), which conflicts with Dr. Jackson's opinion that Dawes can stand and walk for less than an hour total each in an eight-hour workday (AR 530). The ALJ gave Dr. Jackson's "medical source statement little weight," finding, among other things, that "it [was] too restrictive and not fully supported by clinical testing, the treatment records and the consultative examinations." (AR 20.) Dawes argues that the ALJ's assessment of Jackson's opinion violates the treating physician rule. The Commissioner responds that the ALJ complied with the treating physician rule and that his determination is supported by substantial evidence.[3]

---

[3]     The record is ambiguous as to whether Dr. Jackson is a medical doctor or a chiropractic physician. This distinction is significant because "[c]hiropractors are not granted the same status

7

A. **Treating Physician Rule**

Under the treating physician rule, if a treating physician's opinion[4] regarding the nature and severity of a claimant's condition or RFC is "well-supported by medically acceptable clinical

---

as other licensed medical practitioners under the rules governing social security claims." *Lucido v. Barnhart*, 121 F. App'x 619, 621 (6th Cir. 2005). Specifically, SSA regulations do "not include chiropractors as an acceptable medical source for establishing an impairment[.]" *Roby v. Comm'r of Soc. Sec.*, 48 F. App'x 532, 536 (6th Cir. 2002); *see also* 20 C.F.R. § 404.1513(a)(1) (2016) (defining acceptable medical sources to include "[l]icensed physicians (medical or osteopathic doctors)"). Instead, chiropractors are "[other] [m]edical sources" whose evidence may be used "to show the severity of [a claimant's] impairment(s) and how it affects [the claimant's] ability to work." 20 C.F.R. § 404.1513(d)(1) (2016). Notably, district courts in this circuit have found that SSA regulations do not require ALJs to give "good reasons" for discounting an opinion from an "other source," such as a chiropractor. *Lynch v. Saul*, No. 1:19-cv-844, 2020 WL 264260, at *13 (N.D. Ohio Jan. 17, 2020); *see also Brock v. Colvin*, No. 2:10-cv-00075, 2013 WL 4501333, at *4 (M.D. Tenn. Aug. 22, 3013) ("Because the ALJ is not required to afford weight to sources that do not qualify as 'acceptable medical sources,' the ALJ need not give 'good reasons' for the weight she assigns to the opinion of an 'other source.'" (citations omitted)).

The record suggests that the ALJ found Jackson to be a medical doctor in practice at Long Hollow Family Practice in Goodlettsville, Tennessee. (AR 20, 26, 54.) The Commissioner appears to concede on appeal that Jackson is a medical doctor, arguing, among other things, that "the ALJ properly referred to Dr. Jackson's treatment records at Exhibit 14F as records of visits to her primary care physician." (Doc. No. 20, PageID# 739.) However, publicly available records from the Tennessee Department of Health suggest that the only licensed medical provider named Chris Jackson in the community in which Dawes sought treatment is a chiropractor. *See* TN Dep't of Health, *License Verification*, https://apps.health.tn.gov/Licensure/ (last visited Feb, 3, 2020). Public records from the Tennessee Secretary of State show that Chris Jackson is the registered agent for Robertson County Physical Medicine, LLC, in Springfield, Tennessee, which appears to be a chiropractic practice, further suggesting that Jackson is a chiropractor. *See* Tenn. Sec'y of State, *Business Information Search*, https://tnbear.tn.gov/Ecommerce/FilingSearch.aspx (last visited Feb. 3, 2020).

Nevertheless, as explained above, this Court's review of an ALJ's findings under 42 U.S.C. § 405(g) is limited. *See Miller*, 811 F.3d at 833. The Court may "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). Thus, because the ALJ appears to have found that Jackson was an acceptable medical source, and because the Commissioner concedes that Jackson's opinion was subject to the treating physician rule, this Report and Recommendation reviews the ALJ's analysis of Jackson's opinion for compliance with that standard. If the Court adopts this Report and Recommendation and remands for further proceedings, Jackson's credentials should be reviewed on rehearing.

[4] A treating physician is one who "provides [the claimant], or has provided [the claimant], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]." 20 C.F.R. § 404.1527(a)(2). "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [the claimant's]

8

and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record," then the ALJ must give that opinion controlling weight in his analysis. 20 C.F.R. § 404.1527(c)(2); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007) (same); *see also Gentry*, 741 F.3d at 727 (holding that "[t]he treating physician rule also applies to the RFC of the claimant"). The rationale behind the rule is that a treating source's opinion is most likely "to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone . . . ." 20 C.F.R. § 404.1527(c)(2).

A finding that a treating physician's opinion is not entitled to controlling weight—either because it is not well-supported by medically acceptable evidence and techniques or because it is inconsistent with the substantial evidence in the record—does not mean that the opinion should be rejected entirely. "In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." SSR 96-2p, 1996 WL 374188, at *4 (July 2, 1996). In weighing a non-controlling treating physician's opinion, the ALJ must consider the length of the treatment relationship and frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record, the specialization of the treating source, and any other relevant factors. *Gentry*, 741 F.3d at 727 (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)); 20 C.F.R. § 404.1527(c)(2)–(6). "The ALJ need not perform an exhaustive, step-by-step analysis of each factor; she need only provide 'good reasons' for both her decision not to afford the physician's opinion controlling weight and for her ultimate weighing of

---

impairment(s), including . . . symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." *Id.* § 404.1527(a)(1).

the opinion." *Biestek v. Comm'r of Soc. Sec.*, 880 F.3d 778, 785 (6th Cir. 2017), *aff'd*, 139 S. Ct. 1148 (2019). Such reasons must be "supported by the evidence in the case record[ ] and . . . sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996).

Here, the ALJ's reasons for discounting Jackson's opinion regarding Dawes's standing and walking limitations are not supported by substantial evidence in the record. *See Gentry*, 741 F.3d at 727. The ALJ stated that Jackson's opinion

> is too restrictive and not fully supported by clinical testing, the treatment records and the consultative examinations. The sitting, standing and walking limitation of one hour is not consistent with the clinical testing and the claimant's activities of daily living. For example, the claimant walks every day and is able to ambulate effectively on smooth surfaces.

(AR 20.) As an initial matter, because the ALJ considered Jackson's statement as a treating physician opinion, inconsistency with consulting physician opinions or examinations is not a good reason to discredit Jackson's opinion. *See Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 377 (6th Cir. 2013) ("Surely the conflicting substantial evidence [necessary to discount a treating physician's opinion] must consist of more than the medical opinions of the nontreating and nonexamining doctors. Otherwise the treating-physician rule would have no practical force because the treating source's opinion would have controlling weight only when the other sources agreed with that opinion."). The ALJ's reasoning regarding clinical testing, medical treatment, and activities of daily living likewise fail to provide good reasons to discredit Jackson's treating physician opinion.

### 1. Clinical Testing

The clinical testing reported in the record is not inconsistent with Jackson's opinion regarding Dawes's standing and walking limitations and, therefore, is not a good reason for the

ALJ to discount that opinion. Dawes testified that her back and knee problems kept her from standing or walking for prolonged periods of times. (AR 48.) The ALJ discussed three sets of clinical test results in his written opinion (AR 15, 18), only one of which concerned Dawes's back or knees. The ALJ remarked that nerve conduction studies and electromyography in September 2017 "showed no evidence of electrical instability" but were "suggestive of subacute bilateral/S1 radiculopathy" in Dawes's lumbar spine. (AR 15 (citing AR 536).) This test result supports Dawes's claims of back pain and is not inconsistent with Jackson's opinion that Dawes's back pain, in combination with her severe knee problems, prevents her from standing or walking for more than one hour total each per workday. The other clinical testing cited by the ALJ pertains to Dawes's right foot and neck. Diagnostic imaging and physical examination of Dawes's right foot and ankle in July 2016 was "unremarkable" and "revealed no numbness or loss of motion," but led to a diagnosis of tendonitis. (AR 18 (citing AR 433).) Because there is no indication in the record that these test results are relevant to Dawes's back and knee problems, they are not inconsistent with Jackson's opinion regarding Dawes's standing and walking restrictions. Similarly, the radiographs of Dawes's neck taken in June 2017 that revealed "mid to lower cervical degenerative changes" but "[n]o acute abnormality" are not inconsistent with Jackson's opinion limiting Dawes to standing and walking for less than one hour total each based on her back and knee pain. (AR 15 (citing AR 592).)

The consulting physicians' clinical testing results also are not inconsistent with Jackson's opinion regarding Dawes's standing and walking limitations. Dr. William Huffman examined Dawes in October 2016 and found, among other things, that she "had a reduced range of motion of her lumbar spine with pain[,]" "a slightly reduced range of motion in both of her knees with some crepitance, . . . [and] reported pain in her left knee." (AR 18 (citing AR 449).) Huffman also

11

found that Dawes had positive straight leg raise testing but was able to stand on her heels and toes and to stand on her right leg or left leg alone without difficulty. (*Id.*) These brief examination findings do not undermine Jackson's opinion as a treating physician that Dawes cannot stand or walk for more than an hour total each per workday; indeed, the ALJ himself gave only "partial weight" to Huffman's assessment because he found that Huffman's "opined residual functional capacity finding" that Dawes could stand and walk up to seven hours per day "was not restrictive enough . . . ." (AR 18.) Further, consulting psychologist Dr. Karla McQuain did not conduct any clinical testing regarding Dawes's back and knees; she merely "observed that [Dawes] displayed a limping gait[,]" which is also not inconsistent with Jackson's opined limitations. (AR 19 (citing AR 452).)

Additional clinical testing in the record regarding Dawes's back and knee problems lends further support to Jackson's restrictions on Dawes's ability to stand and walk for prolonged periods. For example, a physical examination in August 2017 showed positive bilateral results for straight leg raising (SLR) and for Braggard, Nachla's, and Yeoman's orthopedic testing, indicating, among other things, lumbar joint pain, intervertebral disc pathology, and bone spurs. (AR 479.) A physical examination from 2017 shows severe tenderness on palpation of Dawes's lumbar spine and sacroiliac (SI) joints and mild tenderness on palpation of her thoracic spine and knee. (AR 578.)

Inconsistency with clinical testing was therefore not a sufficient reason for the ALJ to discredit Jackson's opinion regarding Dawes's standing and walking limitations.

### 2. Treatment Records

The ALJ's determination that Dawes's treatment records do not support Jackson's prescribed standing and walking limitations also lacks substantial support in the record. The ALJ did not point to any specific treatment records that he deemed inconsistent with Jackson's opined

limitation, and the Commissioner has not pointed to any such records on appeal. Further, as Dawes points out, the record is replete with examples of her seeking and receiving treatment for knee and back pain as far back as 2011 and as recently as a few months before the ALJ hearing in December 2017. For example, on August 31, 2017, Dawes presented with "chronic pain in [her] lower back, neck [and] [joints] including [her] knees, elbows, [and] fingers." (AR 478.) She reported "severe" pain in her low back that "comes and goes" and prevented her from walking more than half a mile. (AR 475.) She also reported that she could not stand for more than ten minutes without an increase in pain. (*Id.*) In September 2017, Dawes received injections to relieve pain and decrease inflammation in her knees. (AR 490.) She also received prescribed treatment including "manual therapy" and "therapeutic exercises[.]" (AR 482–89, 91.)

The treatment records thus do not provide a basis for the ALJ to discredit Jackson's opinion.

### 3. Activities of Daily Living

The ALJ's final reason for discounting Jackson's "sitting, standing and walking limitation of one hour" was that the limitation was "not consistent with . . . [Dawes's] activities of daily living." (AR 20.) But the record evidence does not substantially support a determination that Dawes's daily activities resulted in her standing or walking for more than one hour each in an eight-hour period.

For example, the ALJ found that Dawes "walks every day and is able to ambulate effectively on smooth surfaces." (AR 20.) Dawes testified that, for the past month, she had been trying to lose weight by walking around a flat parking garage for approximately twelve minutes a day, after which she had to sit down for ten minutes. (AR 47.) There is no indication that this activity approaches or exceeds more than one hour total of walking or standing in an eight-hour period. She further testified that she can only walk on "completely level" surfaces, otherwise "[her]

13

knee will just start hurting badly[,]" (AR 70) and that she can only be on her feet for about "[t]en minutes or so" before she has to "sit down and get some relief" (AR 48).

The ALJ also found that Dawes "dr[o]ve herself to her consultative psychological evaluation," "drives once a week to the store or the doctor[,]" "can prepare simple meals and typically cooks five night[s] a week[,]" and "washes the dishes, vacuums and sweeps." (AR 19.) Dawes's ability to drive, on occasion, is not inconsistent with Jackson's opinion that she cannot stand or walk for more than one hour total each per workday. Regarding meal preparation, Dawes reported making "easy meals like sandwiches [and] frozen [food] daily," but only preparing "cooked meals maybe once a week." (AR 217.) She stated that she "used to cook all the time but [now it] hurts to stand too long[.]" (*Id.*) Dawes stated that "cooked meals usually [take her] an hour" to make. (*Id.*) There is no indication that she stands the entire time she is cooking; rather, Dawes has stated that "[t]he bone spurs in [her] back . . . cause[ ] pain when [she] cook[s] or wash[es] dishes" (AR 204) and that she has to "sit until the pain eases" (AR 238).[5] She also stated that her husband helps her with "dishes [and] vacuuming because he knows the pain it causes." (AR 238.) Dawes stated that, when she cleans her house, she "ha[s] to clean for a little while then sit down for a little while." (AR 204.) She testified that "if [she] vacuum[s] one room[,] [she] ha[s] to go sit down" and that cleaning activities take her "a lot longer than [they] used to." (AR 49.)

Neither the ALJ nor the Commissioner has explained how these minimal activities are inconsistent with Jackson's opinion that Dawes cannot stand or walk for more than one hour each per workday. Because the record lacks substantial support for that determination, inconsistency

---

[5] Even if cooking for one hour could be construed as inconsistent with one-hour total limitations on standing and walking, the fact that Dawes might be able to exceed those limitations once a week does not substantially support the ALJ's determination that Dawes could exceed those limitations five days per week.

14

with daily activities was not a sufficient reason for the ALJ to discredit Jackson's treating physician opinion.

* * *

The ALJ therefore failed to provide good reasons for discounting Jackson's opinion that Dawes can only stand and walk for less than one hour total each during an eight-hour workday. This failure amounts to a violation of the treating physician rule, *see Gentry*, 741 F.3d at 728 (holding that ALJ's analysis "violate[d] the treating source rule because the reasons for discrediting [the treating source's] opinion are not supported by the record"), and warrants remand regardless of whether the ALJ's denial of benefits may be justified by other evidence in the record, *see Miller*, 811 F.3d at 833.

**B.     Harmless Error**

An ALJ's failure to comply with SSA rules mandates remand unless that failure amounts to "harmless error." *Id.* at 723. The Sixth Circuit has explained that an ALJ's violation of the treating physician rule is only harmless if:

> (1) a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it; (2) if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion; or (3) where the Commissioner has met the goal of [20 C.F.R.] § 1527[(c)](2) . . . even though she has not complied with the terms of the regulation.

*Cole v. Astrue*, 661 F.3d 931, 940 (6th Cir. 2011) (quoting *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010)). The Commissioner has not argued that the ALJ's disregard of Jackson's opinion was harmless, and the Magistrate Judge finds that it was not. First, it cannot be said that Jackson's opinion was patently deficient because, as explained above, it is consistent with Dawes's testimony and with clinical testing and medical treatment records. Second, the ALJ did not adopt Jackson's opinion or make findings consistent with it. The ALJ's conclusion that Dawes is capable of "standing and walking for 15 minute intervals for a total of 4 hours per day" (AR 17)

is in conflict with Jackson's opinion that Dawes can stand and walk for less than one hour total each in an 8-hour workday (AR 530). Finally, the ALJ's analysis does not meet the goals of 20 C.F.R. § 404.1527(c)(2) because it "leaves this Court without a clear understanding of why the ALJ" discredited Jackson's opinion. *Cole*, 661 F.3d at 940. As the *Cole* court explained,

> [i]t may be true that, on remand, the Commissioner reaches the same conclusion as to [the claimant's] disability while complying with the treating physician rule and the good reasons requirement; however, [the claimant] will then be able to understand the Commissioner's rationale and the procedure through which the decision was reached.

*Id.* Because Dawes is entitled to this procedural protection, the ALJ's error was not harmless and her case should be remanded.

### C. Remaining Arguments

Dawes argues, in the alternative, that she is entitled to remand and rehearing because the ALJ was not properly appointed under the Constitution. (Doc. No. 19.) This argument will be moot if the Court remands for rehearing because, as Dawes concedes, the Commissioner has since taken "corrective action . . . and properly appointed all" ALJs. (*Id.* at PageID# 717.) Dawes's case will therefore be heard by a constitutionally appointed ALJ on remand. Similarly, because Dawes's case should be remanded to the ALJ to reconsider Jackson's opinion, the Court need not address Dawes's remaining argument that the ALJ improperly evaluated her subjective complaints. The ALJ will no doubt need to reevaluate Dawes's subjective complaints in light of the reconsideration of Jackson's opinion and, if necessary, Dawes may raise this issue again on appeal. *See Wilson v. Colvin*, No. 3:13-CV-84, 2014 WL 619713, at *6 (E.D. Tenn. Feb. 18, 2014).

**IV.    Recommendation**

For these reasons, the Magistrate Judge RECOMMENDS that Dawes's motion for judgment on the administrative record (Doc. No. 18) be GRANTED, that the ALJ's decision be REVERSED, and that this case be REMANDED for further administrative proceedings and rehearing consistent with this Report and Recommendation.

Any party has fourteen days after being served with this report and recommendation to file specific written objections. Failure to file specific objections within fourteen days of receipt of this report and recommendation can constitute a waiver of appeal of the matters decided. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004). A party who opposes any objections that are filed may file a response within fourteen days after being served with the objections. Fed. R. Civ. P. 72(b)(2).

Entered this 6th day of February, 2020.

_____
ALISTAIR E. NEWBERN
United States Magistrate Judge